# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Charles Hall,<br><br>    Petitioner,<br><br>v.<br><br>Ryan Thornell, et al.,<br><br>    Respondents. | No. CV-23-08516-PCT-GMS (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE G. MURRAY SNOW, SENIOR UNITED STATES DISTRICT JUDGE:**

    This matter is on referral to the undersigned United States Magistrate Judge for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 7 at 5).

    Petitioner Anthony Charles Hall ("Petitioner" or "Hall") filed a *pro se* Amended Petition for Writ of Habeas corpus pursuant to 28 U.S.C. § 2254 ("Amended Petition") (Doc. 5), which the Court ordered Respondents to answer (Doc. 7 at 4).[1] The Amended Petition is directed to Petitioner's domestic violence manslaughter and theft of means of transportation felony convictions in Mohave County Superior Court case number CR2021-00382, for which Petitioner was sentenced to a 26.5-year combined term of imprisonment (Doc. 5).

---

[1] Citation to the record indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-23-08516-PCT-GMS (DMF).

On motion of Respondents, the Court stayed these habeas proceedings to allow Petitioner opportunity to exhaust his claims in state court (Docs. 13, 18, 33).

After the state court proceedings were concluded (Doc. 67), the stay was lifted (Doc. 70), and Respondents filed their Limited Answer to [Amended] Petition for Writ of Habeas Corpus ("Answer") (Doc. 73). Petitioner filed a timely Reply in support of the Amended Petition (Doc. 75).

For the reasons set forth below, it is recommended that the Amended Petition be denied and dismissed with prejudice and that a certificate of appealability denied.

## I. BACKGROUND

### A. Petitioner's Convictions and Sentences

In Mohave County Superior Court case number CR2021-00382, Petitioner was charged by indictment with domestic violence second-degree murder, a class 1 felony offense, and theft of means of transportation, a class 3 felony offense (Doc. 73-1 at 4-5). Following a jury trial, Petitioner was convicted of domestic violence manslaughter, a class 2 felony offense which was a lesser included offense to the second-degree murder charge, and theft of means of transportation, a class 3 felony offense (*Id.* at 7-17, 22-25, 91-92; Doc. 73-2 at 14-802). As recounted by the Arizona Court of Appeals in Petitioner's direct appeal:

> After the jury rendered its verdicts, the superior court granted Hall's requests to appoint a mental health expert and order a mental examination and evaluation. Before sentencing, defense counsel submitted the evaluation as mitigating evidence. In her report, the evaluator noted that Hall was an "unreliable historian," gave conflicting statements, and had "significant memory problems." The evaluator recounted Hall's claims that the victim sexually assaulted him and engaged in controlling behaviors. Ultimately, the evaluator opined that she was unable to diagnose Hall with post-traumatic stress disorder or any other condition but "recognize[d]" that he "potential[ly]" endured "physical and psychological trauma."

(Doc. 73-1 at 92).[2]  The superior court sentenced Petitioner to a combined term of

---

[2] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be

imprisonment of 26.5 years, consisting of 20 years imprisonment for domestic violence manslaughter and 6.5 years imprisonment for theft of means of transportation (*Id.* at 22-25, 92; Doc. 73-2 at 852-855). Petitioner was represented by the same counsel at trial and sentencing (Doc. 73-1 at 7-17, 22-25; Doc. 73-2 at 15, 805).

### B. Direct Appeal

On timely direct appeal, Petitioner was represented by different counsel from his trial and sentencing counsel (Doc. 73-1 at 27-28, 30). Petitioner raised one issue on appeal: whether the superior court erred by failing to consider mitigating evidence of impaired capacity due to mental issues and past acts of abuse against Petitioner by the victim (*Id.* at 30-65). On March 3, 2023, the Arizona Court of Appeals affirmed the superior court (*Id.* at 89-94). No motion for reconsideration was filed, no petition for review to the Arizona Supreme Court was filed, and the mandate issued on May 17, 2023 (*Id.* at 96-104).

### C. Post-Conviction Relief ("PCR") Proceedings

On June 12, 2023, Petitioner's appellate counsel filed a notice of post-conviction relief ("PCR notice") in the superior court (*Id.* at 106-108). The superior court appointed new counsel to represent Petitioner in the PCR proceedings ("PCR counsel") (*Id.* at 110-111; Doc. 13-1 at 21, 23). Petitioner objected to his appellate counsel having filed the PCR notice, expressing anger and dissatisfaction with appellate counsel's performance (Doc. 73-1 at 113-115). The superior court acknowledged the objection, noting that Petitioner was appointed new counsel in the PCR proceedings (*Id.* at 117-118). The superior court stated that PCR counsel would confer with Petitioner and determine what next PCR steps Petitioner desired, and the superior court took no further action on Petitioner's objection (*Id.*).

On June 17, 2024, PCR counsel filed a notice avowing that, after reviewing the record, she could not identify any colorable PCR claims on Petitioner's behalf (*Id.* at 120-133). Thereafter, Petitioner was permitted to file a pro se PCR petition, with PCR counsel

---

correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

1  remaining as advisory counsel (*Id.* at 135-136). Petitioner timely filed his pro se PCR petition with various attachments, some of which were unrelated to PCR relief (*Id.* at 138-191). In his PCR petition, Petitioner asked the court to reduce his sentence for the manslaughter conviction, arguing the sentence was illegal (*Id.*). Petitioner also made vague statements indicating beliefs that someone else had killed the victim and that the evidence against Petitioner was fraudulent, although Petitioner did not affirmatively raise these matters as any claim for relief (*Id.*). In the PCR petition, Petitioner expressed that he had "no faith" in the PCR process and made other statements unrelated to PCR relief (*Id.*). Petitioner did not request any additional discovery or disclosures in the superior court PCR proceedings (Doc. 73-2 at 9; *see id.* at 5-7). The state responded to the PCR petition, arguing that the trial court had imposed lawful sentences and that Petitioner had not presented any cognizable claims for relief beyond the challenge to his sentence (*Id.* at 2-3).

On July 15, 2024, the superior court dismissed the PCR proceedings, finding that most of the PCR petition "discusses topics that cannot be understood to outline any claim for relief" and that the "only cognizable claim for relief" is a challenge to Petitioner's sentence (*Id.* at 5-7). The superior court found that the sentences imposed were lawful, and the superior court denied post-conviction relief (*Id.*). Petitioner did not file a motion for rehearing in the superior court or a petition for review with the Arizona Court of Appeals (*see* Doc. 67 with exhibits).

## II.   THESE HABEAS PROCEEDINGS AND CLAIMS

Respondents concede that these proceedings were timely filed (Doc. 73 at 1).

In August 2023, Petitioner filed an Amended Petition raising four claims for habeas relief (Doc. 5). In his four grounds for relief, Petitioner asserts he was denied due process, effective assistance of counsel, trial by an impartial jury, and equal protection, and Petitioner asserts that the prosecutor engaged in misconduct, all in violation of the Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments (*Id.* at 6-13). In his first claim, Petitioner appears to argue that he is actually innocent of the charges for which he was

convicted because Mohave County law enforcement "frame[d]" him for the offenses (*Id.* at 6–7). In his second claim, Petitioner appears to argue he is actually innocent because the victim was misidentified and appears to argue that Petitioner was denied effective assistance of counsel because his trial counsel did not properly investigate the case (*Id.* at 8–9). In his third claim, Petitioner appears to argue that he was denied effective assistance of appellate counsel because appellate counsel did not file a motion to reconsider the court of appeals' decision on direct appeal and did not file a petition for review with the Arizona Supreme Court of the denial of his direct appeal (*Id.* at 10–11). In his fourth claim, Petitioner appears to allege several instances of prosecutorial misconduct and judicial misconduct (*Id.* at 12–13).

Petitioner's PCR proceedings in the Mohave County Superior Court were ongoing when Petitioner initially filed these proceedings in July 2023, and the superior court PCR proceedings remained ongoing when Petitioner filed Amended Petition in August 2023 (Doc. 1; Doc. 5; Doc. 13 with exhibits). Therefore, Respondents moved to stay these proceedings (Doc. 13). In the February 12, 2024, Report and Recommendation in favor of a stay, undersigned observed that "Petitioner's collateral review proceedings are pending in superior court, appear to be timely, and still need to proceed through the superior court and the Arizona Court of Appeals for exhaustion" (Doc. 18 at 3). This Court stayed these habeas proceedings to allow Petitioner opportunity to exhaust his habeas claims in the state courts (Doc. 33).

After the state court PCR proceedings were concluded (*See* Doc. 67 with exhibits), the stay was lifted (Doc. 70) and Respondents filed their Answer (Doc. 73). In their Answer, Respondents argue that Petitioner's actual innocence claims are non-cognizable, that Petitioner's actual innocence claims would fail on the merits if cognizable, and that the remainder of Petitioner's claims are procedurally defaulted without excuse (Doc. 73).

Plaintiff filed a timely Reply in support of the Amended Petition (Doc. 75).

### III.   PETITIONER'S ACTUAL INNOCENCE CLAIMS FAIL

The United States Supreme Court has "not resolved whether a prisoner may be

entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *see also Prescott v. Santoro*, 53 F.4th 470, 482 (9th Cir. 2022). The Ninth Circuit has "stated that, to the extent a federal actual innocence claim exists, a petitioner asserting such a claim need assert more than that insufficient evidence supported the petitioner's conviction." *Prescott*, 53 F.4th at 482 (citing *Carriger v. Stewart*, 132 F.3d 463, 476–77 (9th Cir. 1997) (en banc)). "Instead, the petitioner must demonstrate that in light of new evidence, it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Prescott*, 53 F.4th at 482 (brackets and citations omitted). "This new evidence must be reliable, and the reviewing court 'may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 332 (1995)).

Even assuming that a freestanding actual innocence claim is cognizable in a non-capital case, Petitioner's assertions of actual innocence do not come close to meeting the demanding standard for a successful actual innocence claim. No evidence was submitted with the Amended Petition, and none of the Reply's attachments are new evidence. Respondents are correct that Petitioner's attempts "to present evidence in support of his actual innocence claims in subsequent pleadings, Docs. 15, 20, 31, 47, 51, 58," do not contain new evidence establishing actual innocence (Doc. 73 at 10).

> Rather, it is evidence that was available to [Hall] at the time of his trial—for example, he includes police reports related to the charges and transcripts from the trial as exhibits. Although he presents his interpretation of what that evidence reveals, that is not sufficient to establish a claim of actual innocence. Hall must present "new reliable evidence" of his innocence, *Schlup,* 513 U.S. at 324, not new theories of what existing evidence shows. To the extent he includes "new" information—such as pleadings or documents related to civil suits Hall has filed against Mohave County officials— none of it establishes his innocence.

(*Id.*). Further, the trial transcripts in the record reflect extensive evidence supporting Petitioner's conviction (Doc. 73-2 at 14-802). As recounted by the Arizona Court of Appeals:

¶2 Shortly after meeting, the victim invited a homeless Hall to move into a two-bedroom house he shared with a family friend (the roommate). Hall accepted the invitation. Approximately three months after Hall moved in, the roommate moved out.

¶3 A few weeks later, the roommate returned to the victim's home to collect her mail and check on the victim. When she approached the front door, she noticed broken glass on the ground. Concerned, she walked around the house and entered through a back door. Once she stepped inside, the roommate saw blood on a nearby washing machine and noticed a blanket covering what appeared to be a body in the living room. The roommate immediately "backed out" of the house and called the police.

¶4 When responding officers arrived at the scene, they conducted a protective sweep of the residence and found the deceased victim wrapped in a blanket and blood throughout the house. During the ensuing investigation, law enforcement personnel collected finger and hand prints, blood samples, and surveillance camera footage from the victim's home.

¶5 Reviewing the camera footage, officers observed that only Hall and the victim entered the residence during the three days before the discovery of the victim's body. Thereafter, only Hall left the house, driving away in the victim's car.

¶6 By "pinging" his cellular phone, law enforcement officers located Hall in Texas. In coordination with local officers, Texas authorities apprehended Hall and took possession of the victim's vehicle. At the time of his arrest, Hall had multiple hand injuries, knee abrasions, and a black eye. When the officers took possession of the victim's car, the vehicle's Arizona license plate was missing and a California license plate was attached.

¶7 An autopsy revealed the victim sustained cuts and bruises to his face, a broken nose, displaced teeth, torn lips, bite marks on his back, cuts to his hands, eye hemorrhaging, and neck and scalp injuries. The medical examiner concluded that the victim died from numerous injuries, including blunt force trauma and ligature strangulation.

¶8 After comparing Hall's DNA profile and exemplar prints to evidence collected from the victim's home, law enforcement confirmed Hall's blood at the scene, along with his bloody palm print on the victim's washing machine. Hall's social media account revealed an acrimonious relationship between Hall and the victim. In their social media posts, the victim accused

> Hall of physical assault and Hall accused the victim of physical and sexual assault.
>
> ¶9 The State charged Hall with one count of second-degree murder by domestic violence and one count of theft of means of transportation. The State also alleged aggravating circumstances and that Hall had three prior felony convictions.
>
> ¶10 At trial, Hall testified that soon after he moved in, the victim began making unwanted sexual advances. Hall recounted that he initially rebuffed the victim's advances, but the victim responded violently, so Hall "submit[ted]" to maintain "peace." According to Hall, the victim assaulted him the day he left the residence and took the victim's car. But Hall denied killing the victim and maintained that the victim was alive the last time he saw him. On cross-examination, Hall admitted switching the car's license plate, but testified that he "full[y] inten[ded]" to return the victim's car.

(Doc. 73-1 at 100-101).[3]

Thus, to the extent that a freestanding claim of actual innocence is cognizable in a federal habeas corpus proceeding in the non-capital context, Petitioner's claims of actual innocence do not warrant habeas relief and should be denied.

## IV. PETITIONER'S CLAIMS ARE PROCEDURAL DEFAULTED WITHOUT EXCUSE

### A. Legal Framework of Procedural Default

#### 1. Exhaustion

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v.*

---

[3] *See supra* note 2.

*Netherland*, 518 U.S. 152, 162-63 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").

In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *See Swoopes*, 196 F.3d at 1010; *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *Castillo v. McFadden*, 399 F.3d 993, 998 & n.3 (9th Cir. 2005). Fair presentment of claims to the Arizona Court of Appeals requires a description of "both the operative facts and the federal legal theory on which [a] claim is based so that the state courts [could] have a 'fair opportunity' to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Castillo*, 399 F.3d at 999 (quoting *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003)).

It is not fair presentment, for example, that "all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). It is also not enough to rely on a "general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Netherland*, 518 U.S. at 163; *see also Castillo*, 399 F.3d at 1002-03 (finding habeas petitioner did not give the state appellate court a fair opportunity to rule on a federal due process claim because "[e]xhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory," and the petitioner's claim in state court was a "conclusory, scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory").

Fair presentment is not achieved by raising the claim for "the first and only time in a procedural context in which its merits will not be considered," unless there are special circumstances. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). As example, raising a claim for the first time in a discretionary petition for review to the Arizona Supreme Court or in a special action petition is not sufficient to achieve fair presentment. *See Casey v. Moore*,

386 F.3d 896, 918 (9th Cir. 2004) ("Because we conclude that Casey raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them.") (footnote omitted).

### 2. Procedural Default

A corollary to the exhaustion requirement is the "procedural default doctrine." The procedural default doctrine limits a petitioner from proceeding in federal court where his claim is procedurally barred in state court and "has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. This is called an express procedural bar. An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits."); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. *See Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. . . . In

this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing *Harris*, 489 U.S. at 264 n.10).

Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *Boerckel*, 526 U.S. at 848 (holding that when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (holding that failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims). This is called an implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). This type of procedural default is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, Petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

In Arizona, claims not properly presented to the state courts are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(b), 33.1(b)–(h) & 33.2(b)(1) (limiting successive petitions for post-conviction relief to claims of: court lacked subject-matter jurisdiction to render judgment or impose sentence; sentence, as imposed, not authorized by law or plea agreement; custody continues or will continue beyond sentence's expiration; newly-discovered material facts that would have changed the outcome; defendant not at

fault for failure to file a timely PCR notice; significant change in the law, retroactively applicable, would probably overturn conviction or sentence; actual innocence); Ariz. R. Crim. P. 33.2(b)(2) (allowing additional exception for pleading defendants: a timely successive petition for post-conviction relief is permitted to claim counsel from first PCR proceeding was ineffective).

Besides preclusion, Arizona has a time bar requiring a PCR notice in a non-capital case to be filed either "within 90 days after the oral pronouncement of sentence" (all defendants) or "within 30 days after the issuance of the mandate in the direct appeal, whichever is later" (non-pleading defendants only). Ariz. R. Crim. P. 32.4(b)(3)(A); Ariz. R. Crim. P. 33.4(b)(3)(A); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness bar under former Rule 32.4(a) as a basis for dismissing an Arizona petition for post-conviction relief, distinct from preclusion under former Rule 32.2(a)); *State v. Lopez*, 323 P.3d 1164, 1165–66, ¶¶ 5–9 (Ariz. Ct. App. 2014) (discussing differences between the time-bar rule, former Rule 32.4(a), and the waiver rule, former Rule 32.2(a)(3)). As with the preclusion bar, an untimely PCR notice is only permitted for a narrow category of claims—the same narrow category of claims that are exempted from the preclusion bar. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.4(b)(3)(B), 33.1(b)–(h), 33.4(b)(3)(B). If a claim does not fall within one of the narrow exceptions or is filed outside the time limits, the PCR notice is subject to summary dismissal. *See, e.g.*, *State v. Diaz*, 269 P.3d 717, 719–21, ¶¶ 5–13 (Ariz. Ct. App. 2012); *State v. Rosario*, 987 P.2d 226, 228, ¶ 7 (Ariz. Ct. App. 1999).

Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not properly raised on direct appeal or in prior Rule 32 post-conviction proceedings. *See, e.g., Smith*, 536 U.S. at 860 (holding that determinations made under Arizona's procedural default rule are "independent" of federal law); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (finding unexhausted claims were procedurally defaulted because petitioner was "now time-barred under Arizona law from going back to state court"); *Smith v. Stewart*, 241 F.3d 1191, 1195 n.2 (9th Cir. 2000) ("We have held

that Arizona's procedural default rule is regularly followed [or "adequate"] in several cases.") (citations omitted), *rev'd on other grounds*, *Smith*, 536 U.S. at 856; *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (strictly applying waiver and preclusion rules in post-conviction proceedings). A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who completely fails to attempt to exhaust his state remedies. In Arizona, "ineffective assistance of counsel claims should be raised in post-conviction relief proceedings pursuant to rule 32, Arizona Rules of Criminal Procedure." *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001) (quoting *State v. Atwood*, 832 P.2d 593, 616 (Ariz. 1992)) (finding that failure to raise ineffective assistance of counsel claims on direct appeal did not bar federal habeas review).

*3. Excuse for Procedural Default*

The Court may review a procedurally defaulted claim if the petitioner can demonstrate either: (1) cause for the default and actual prejudice to excuse the default, or (2) a miscarriage of justice/actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is something that "cannot be fairly attributable" to a petitioner, and a petitioner must show that this "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citation and internal quotation marks omitted). To establish prejudice a "habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Id.*

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that

the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original). To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). Significantly, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011); *McQuiggin*, 569 U.S. at 399 (explaining the significance of an "[u]nexplained delay in presenting new evidence"). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327)). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

### B. Analysis

Upon careful review of the record and applicable law, the Court concludes that all the claims in the Amended Petition claims are unexhausted and procedurally defaulted without excuse. Petitioner never fairly presented (indeed, he never presented at all) any of his habeas claims in the Arizona Court of Appeals, and he is now barred from attempting to do so. Petitioner does not demonstrate cause and prejudice to excuse his procedural defaults. Further, Petitioner fails to demonstrate a miscarriage of justice to excuse his procedural defaults.

Petitioner's only claim on direct appeal was whether the superior court erred by failing to consider mitigating evidence of impaired capacity due to mental issues and past acts of abuse against Petitioner by the victim (Doc. 73-1 at 30-65, 89-94). Petitioner did not file a petition for review in the Arizona Court of Appeals regarding the superior court's

denial of PCR relief (Doc. 67 with exhibits), and the time to do so has expired. *See* Ariz. R. Crim. P. 32.14(a); 32.16(a). Moreover, Petitioner's only previous claim in his superior court PCR proceedings regarded his sentence, and Petitioner is now barred from attempting to raise his habeas claims in state court under Arizona's procedural rules. *See* Ariz. R. Crim. P. 32.2(a)(3), (b); 32.16(a)(1). As a result, Petitioner's habeas claims in his Amended Petition are now technically exhausted but procedurally defaulted. *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) ("If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, state-court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability." (internal quotation marks and ellipses omitted)).

The procedural default applies for all of Petitioner's claims in the Amended Petition, including Petitioner's actual innocence claims in his Amended Petition.[4] Because Petitioner's PCR petition in superior court was filed after the Amended Petition, Petitioner cannot provide an explanation why he did not raise the same claims in his pro se PCR petition in the superior court. Nor can Petitioner explain why he did not exhaust his habeas claims by petitioning for review in the Arizona Court of Appeals upon denial of his pro se PCR petition. Indeed, Petitioner was expressly alerted that exhaustion required Petitioner to raise his habeas claims not only in the superior court, but in the state court of appeals. In the February 12, 2024, Report and Recommendation in favor of a stay, undersigned observed that "Petitioner's collateral review proceedings are pending in superior court,

---

[4] Given the organizational order of the arguments in Respondent's Answer and Respondents' argument that actual innocence is not a cognizable claim, the Answer may be construed as lacking express argument that Petitioner procedurally defaulted his actual innocence claims (Doc. 73). Nevertheless, Respondents asserted procedural default of all Petitioner's claims in their motion to lift stay (Doc. 67 at 2-3). Further, Petitioner recently wrote in a filing in these proceedings that Petitioner "felt it was unnecessary to pursue all those useless Petition for Review request" and that pursuing a Petition for Review "is a waste of our resources" (Doc. 68 at 3-4). Before filing his pro se PCR petition in the state superior court and before deciding not to file a petition for review to the Arizona Court of Appeals in his PCR proceedings, Petitioner had notice of the need to exhaust his habeas claims in the state courts or the claims are procedurally defaulted and subject to dismissal (*see* Docs. 7 at 2, 13, 18, 33 at 2). Petitioner's admitted and intentional failure to properly exhaust his habeas claims in the state courts need not be ignored in this Court's analysis. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003).

appear to be timely, and still need to proceed through the superior court and the Arizona Court of Appeals for exhaustion" (Doc. 18 at 3). This Court stayed these habeas proceedings to allow Petitioner opportunity to exhaust his habeas claims in the state courts (Doc. 33), but Petitioner chose not to do so.

Respondents observe that Petitioner appears to assert that his failure to properly present his claims to the Arizona Court of Appeals was due to the ineffective assistance of appellate counsel (Doc. 73 at 18). Respondents are correct that neither these assertions nor Petitioner's circumstances excuse his procedural defaults:

> While ineffective assistance of appellate counsel may constitute cause excusing a procedural default, the claim must itself be properly exhausted in State courts. *See Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003) ("To constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim."). As argued above, Hall has never presented an ineffective assistance of appellate counsel claim in State court. It, therefore, cannot constitute cause to excuse his procedural default.
>
> Hall does not assert any other basis to excuse his procedural defaults. The fact he is incarcerated is not cause excusing his procedural defaults. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (habeas petitioner failed to establish cause justifying procedural default due to alleged deficiency with access to prison library); *see also Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("[T]he fact that Bonilla's time in the prison law library was limited to four hours per week was insufficient to establish cause to excuse his procedural default."). Nor is his lack of legal training. *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance on jailhouse lawyers did not constitute cause); *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (illiterate pro se petitioner's lack of legal assistance did not constitute cause to excuse procedural default); *see also Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default.").

(*Id.*). Thus, Petitioner fails to demonstrate any cause, much less resulting prejudice, to excuse his procedural defaults. Nor, as discussed further below in Section III, *supra*, does Petitioner demonstrate that he is actually innocent to excuse his procedural defaults.

- 16 -

All of Petitioner's habeas claims in the Amended Petition are procedurally defaulted without excuse, and, therefore, the Amended Petition should be dismissed with prejudice.

## V. AN EVIDENTIARY HEARING IS NOT APPROPRIATE

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes "an express limitation on the power of a federal court to grant an evidentiary hearing" in habeas proceedings and has "reduced considerably the degree of the district court's discretion." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999) (internal quotation marks and citation omitted). Title 28, Section 2254(e)(2) of the United States Code "restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) (citing *Williams v. Taylor*, 529 U.S. 420, 427-29 (2000)). Section 2254(e)(2) provides that if a habeas petitioner:

> has failed to develop the factual basis of a claim in State court proceedings, no evidentiary hearing will be held in federal court unless the petitioner shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2); *see also Ramirez*, 596 U.S. at 369 (2022) ("[W]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.").

Further, an evidentiary hearing is "not required 'on issues that can be resolved by reference to the state court record.'" *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010) (quoting *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994)). Also, a district court is not required to hold an evidentiary hearing where 28 U.S.C. § 2254(d) precludes relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Pinholster*, 563 U.S. at 183. Insofar as an evidentiary hearing on claims that were adjudicated on the merits in state court, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (9th Cir. 2013) (noting that the holding of *Pinholster* is also applicable to § 2254(d)(2) claims). Because review under Section 2254(d)(1) "requires an examination of the state-court decision at the time it was made[,] . . . the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Pinholster*, 563 U.S. at 182; *see also Shoop v. Twyford*, 596 U.S. 811, 819 (2022).

Because Petitioner has not met the requirements of 28 U.S.C. § 2254(e)(2) and the state court record otherwise sufficiently resolves Petitioner's habeas claims, Petitioner is not entitled to an evidentiary hearing on any of the claims raised in the Amended Petition.

## VI. CONCLUSION

As set forth above, Petitioner has not met the high burden that would be required if an actual innocence freestanding claim is cognizable. Further, Petitioner procedurally defaulted without excuse all of the claims in his Amended Petition. It is recommended that the Amended Petition be denied and dismissed with prejudice without an evidentiary hearing and that the Clerk of Court be directed to terminate this matter.

Assuming the recommendations herein are followed in the District Judge's judgment, it is recommended that a certificate of appealability be denied because dismissal is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable, because Petitioner has not "made a substantial showing of the denial of a constitutional right[,]" and because jurists of reason would not find the Court's rejection on constitutional grounds of Petitioner's actual innocence claims to be "debatable or

wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly,

**IT IS RECOMMENDED** that the Amended Petition (Doc. 5) be denied and dismissed with prejudice and that the Clerk of Court directed to terminate this matter.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be denied in this matter.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

**Dated this 25th day of November, 2024.**

_____
Honorable Deborah M. Fine
United States Magistrate Judge